[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO VACATE ARBITRATION AWARD #103
The issue before the Court is whether the defendant's application to vacate the arbitration award should be granted on the ground that "[t]he arbitrators exceeded their power and/or imperfectly executed it in finding the issues of coverage in a manner as reflect in their award."
It is found that Pennsylvania substantive law should have been applied to the facts of this case. Accordingly, it is found that the application to vacate should be granted.
Facts
On December 6, 1991, the plaintiff/respondent, United States Fidelity and Guaranty Company ("plaintiff") filed this application to vacate the arbitration award made to the defendant/claimant, Meta Katrick ("defendant"), on November 12, 1991. The factual findings of the arbitrators are not in dispute. The arbitrators found that the defendant, a Connecticut resident, was a passenger in a vehicle involved in an accident with another vehicle on April 23, 1988, in Pennsylvania. The insureds under the automobile insurance policy are the plaintiff and Paul and Doris Schur, the owners of the car in which the defendant was injured. As asserted CT Page 3660 by the plaintiff in its memorandum, and uncontradicted by the defendant, the place where the contract was made is Pennsylvania, where the Schurs are domiciled and reside. The plaintiff and defendant agreed to conduct the arbitration in Connecticut because the arbitration clause provides that arbitration should take place in the county where the insured lives. (Defendant becomes the insured pursuant to the terms of the insurance contract by virtue of being a passenger in the covered automobile.)
The arbitrators "found liability in favor of the [defendant]", (Arbitrators' Decision, para. 2), and against the driver of the other vehicle, Bonnie J. Catalfamo. The arbitrators further found that Catalfamo's liability insurance policy was exhausted by payment of $25,000 to the defendant, and that defendant also received $1,666.67 as a Basic Reparations Benefit. Thus, the arbitrators found that plaintiff was entitled to a total credit of $26,666.67.
Plaintiff now challenges the arbitrators' determination that the total underinsured motorist coverage was $300,000, "in that there are three vehicles listed on [plaintiff's] policy with coverage of $100,000 each." (Arbitrators' Decision, para. 5). (This practice of combining coverage of all cars covered by an insurance policy is called "stacking".)
The arbitrators awarded the defendant $176,666.67, less the credit due plaintiff; a total award of $150,000.
In its memorandum filed with the application, and in its supplemental memorandum filed on February 21, 1992, plaintiff argues that the arbitrators erred in applying Connecticut law to the facts found. It argues that Pennsylvania law, and not Connecticut law, controls. Under Pennsylvania law, the plaintiff contends that the award would have been significantly reduced, since this defendant would be precluded from "stacking" the coverage. Plaintiff requests that the court conduct a de novo review of the case.
In her memorandum in opposition, filed on January 31, 1992, defendant makes two arguments. Primarily, the defendant argues that during the arbitration proceeding, plaintiff make no claims concerning the applicability of Pennsylvania law. She further argues that the arbitrators were not required to take judicial notice of foreign law, but that it was the duty of the plaintiff to raise the issue at the hearing. Additionally, defendant argues that under Connecticut case law, the award of the arbitrators was appropriate.
In a supplemental memorandum, filed on February 28, 1992, the defendant introduces two additional arguments; (1) if CT Page 3661 Pennsylvania law were to be followed, a de novo review could not be made, since Pennsylvania law has no such provision; and (2) plaintiff has not sought to introduce the record of the arbitration proceedings. Defendant maintains that absent such a record, the court cannot conduct a de novo review of the case. Therefore, defendant argues, the court is limited to comparing the submission to the award, the standard of review required for awards made from voluntary arbitration proceedings.
Discussion
A. What Standard of Review Applies?
The parties rely upon two statutes with regard to the application before the court.
General Statutes 52-418 (a) provides in relevant part:
 Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: . . . if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.
General Statutes 38a-336 (c) provides in relevant part:
 Each automobile liability policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding.
It is settled law that automobile insurance coverage issues arbitrated pursuant to 38a-336 are viewed as compulsory. Wilson v. Security Ins. Group, 199 Conn. 618, 626, 509 A.2d 467 (1986).
It is also well settled that when judicial review of such compulsory arbitration proceedings is undertaken pursuant to 52-418, "the reviewing court must conduct a de novo review of the interpretation and application of the law by arbitrators." American Universal Ins. Co. v. DelGreco, 205 Conn. 178, 191,530 A.2d 171 (1987).
Accordingly, it is found that plaintiff is entitled to a de novo review of the proceeding.
B. The De Novo Review CT Page 3662
An arbitration award may be vacated if the arbitrators imperfectly executed their powers. See General Statutes52-418 (a). In a de novo review of the arbitration award, the court reviews the legal bases of the arbitrators' decisions. Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646, 664, 591 A.2d 101
(1991).
A "review of questions of law includes . . . inquiry into whether the arbitrators have exceeded their powers or imperfectly executed them." Id. A de novo review of the law applied does not require the record of the arbitration proceedings to be submitted to the court. American Universal, supra. The application of the wrong state's law constitutes an imperfect execution of the arbitrators' powers. Such a choice of law issue is a legal determination which is for the court to resolve. Therefore, a choice of law analysis is necessary.
The foreign law of a state will be recognized and enforced by the forum state when the application of the conflict of laws rule observed by the forum state determines that the foreign law is the appropriate law to be enforced. 15A C.J.S. Conflict of Laws 3(5) (1967) (updated through 1991).
Generally, in contractual disputes, a state follows either the choice of law rule set forth in Restatment 1st, Conflict of Laws, ("Restatement (First)") or Restatement 2nd, Conflict of Laws, ("Restatement (Second)").
In Restatement (First), 612, the rule is that the forum state should apply the substantive law of the state where the contract was made, unless the contract was to be performed or have its beneficial operation elsewhere. In the case of automobile insurance, "it has been stated that the place where the contract is made is deemed to be the place of performance, unless the agreement evidences that a different place was fixed." Appleman, Insurance Law and Practice, 7094 (1981, updated through 1991); see Whitfield v. Empire Mutual Ins. Co., 167 Conn. 499, 356 A.2d 139 (1967).
In Restatement (Second), 188, "the contacts to be taken into account . . . in determining the law application to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the CT Page 3663 contract, and
 (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."
This test is referred to as the "most significant relationship" test, i.e., the state which has the most significant relationship to the transaction and the parties.
The Connecticut Supreme Court has chosen to follow the "place of contract" rule of Restatement (First), unless some fundamental principle of justice would be violated; see Graham v. Wilkins,145 Conn. 34, 40, 138 A.2d 705 (1958); Ciampittiello v. Campitello,134 Conn. 51, 56-57, 54 A.2d 669 (1947); although it has been recognized but not yet applied, the Restatement (Second) "most significant relationship" rule; see Casanova Club v. Bisharat,189 Conn. 591, 598-99, 459 A.2d 1 (1983).
In the present action, as stated above, the purchasers of the insurance policy live in Pennsylvania. The contract was negotiated and executed in Pennsylvania, and the accident occurred in Pennsylvania.
Moreover, when amendments to the policy were made, the plaintiff insurer indicated that they were for Pennsylvania, including the amendment headed "Uninsured/Underinsured Motorists Coverage — Pennsylvania". Additionally, the arbitration clause requires that the procedural law be in accordance with the Pennsylvania Uniform Arbitration Act. The only relationship this action has to the State of Connecticut is that the defendant is domiciled here.
It is clear that the insurance contract was made and intended to be performed or interpreted under the laws of the State of Pennsylvania. Therefore, under the Restatement (First) analysis, the substantive law of the State of Pennsylvania should have been applied to the facts of this case. This result would be the same under the Restatement (Second) "most significant relationship" analysis.
Accordingly, it is found that the arbitrators have imperfectly executed their powers, and the application to vacate the award should be granted. The parties are left with the option of pursuing a second arbitration proceeding. See Aetna Life Casualty Co. v. Bulaong, 218 Conn. 51, 64, n. 11, 588 A.2d 138
(1991). The application to vacate is granted.
WILLIAM J. McGRATH, J. CT Page 3664
CT Page 3664